UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTY CALLAHAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 20-cv-11978-ADB |
| MERZ NORTH AMERICA, INC., | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER ON MOTION TO COMPEL**

BURROUGHS, D.J.

In this employment action, Plaintiff Christy Callahan brings various claims against her former employer Defendant Merz North America, Inc. ("Merz"). [ECF No. 1-2 at 5–18]. Currently before the Court is Merz's motion to compel Ms. Callahan to provide additional deposition testimony and to produce documents. [ECF No. 23]. For the reasons set forth below, the motion is DENIED.

**I.      BACKGROUND**

On December 2, 2019, Kim Lobell, an Associate Director in Merz's Human Resources Department, sent Ms. Callahan the following email:

Dear Christy,

I am writing to follow up on my email on November 27. It is very important that you let me know which appointment you select to see Dr. Lahaie. He is no longer available December 5, but he could see you the 6th between 8-1045 am. He could also see you on the 9th between 2-5 pm or the 10th between 2-4 pm.

We approved [Family and Medical Leave Act ("FMLA")] leave through October 31, 2019. You went to see a doctor on November 8th who excused you retroactively to October 11th through January 3, 2020. It is this certification which we are seeking a second opinion on, and this is our right under the FMLA. We do

> not contest your right to leave through October 31 but we are asking another doctor to opine on the need for leave after that date.
>
> If I do not hear from you to schedule one of these time slots, you will not be entitled to FMLA leave from November 1 to the present, and that lengthy, unexcused absence may result in your termination.  So it is very important that you respond to me and see Dr. Lahaie on one of these dates.  You can explain your concerns about confidentiality to Dr. Lahaie at that time, but please be assured that Merz will treat all records related to your FMLA certification, including Dr. Lahaie's records, as confidential medical records, and they will be segregated from your personnel file.
>
> Thank you,
>
> Kim

[ECF No. 24-1 at 1].  On December 9, 2019, Ms. Callahan sent the following response:

> Kim,
>
> Prompted by your last email, I consulted 2 different experts who informed me there is no legal basis/validity for this requirement.  Also, each confirmed my FMLA rights are being interfered with/violated, along with my HIPPA [sic] rights too.
>
> Both are puzzled by your email on 12/2 informing me that my leave (approved on 11/13), was unapproved, and that I've been on an 'unexcused absence' since 11/1. In these experts' opinions, these emails along with the termination threat are intended to intimidate me.
>
> Therefore, I respectfully decline an appointment with your psychiatrist.  If you decide to terminate me in retaliation, I will select 1 of these 2 attorneys to communicate on my behalf.  I have made courageous efforts to communicate with you directly, but this incredible stress is extremely unhealthy for me to continue dealing with, especially while trying to focus on my health.
>
> Thank you

[Id.].

Ms. Callahan was deposed on October 15, 2021.  [ECF No. 24 ¶ 8].  When questioned about her communications with attorneys in December 2019, Ms. Callahan asserted attorney-client privilege and refused to answer.  [Id. ¶¶ 9–10].

On October 26, 2021, Merz filed the instant motion, seeking to compel Ms. Callahan to produce documents and provide testimony regarding: "(1) all attorney-client communications

2

about Merz's right (or lack thereof) to obtain a second opinion under the [FMLA], including communications about [her] refusal to comply with Merz's request for such a second opinion; and (2) all attorney-client communications regarding [her] return to work in December 2019." [ECF No. 23 at 1].  Ms. Callahan opposed the motion on November 5, 2021.  [ECF No. 28].

II.     DISCUSSION

The First Circuit has held that attorney-client communications that meet the following criteria are shielded from disclosure:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 John H. Wigmore, Evidence § 2292, at 554 (John T. McNaughton rev. ed., 1961)).  "Generally, disclosing attorney-client communications to a third party undermines the privilege."  Id. at 246–47 (citing United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999)).  "First Circuit law with respect to partial disclosures of attorney-client communications is less developed."  United States v. Joint Active Sys., Inc., No. 19-mc-91053, 2020 WL 9747574, at *5 (D. Mass. Apr. 28, 2020) (citing Trs. of Bos. Univ. v. Everlight Elecs. Co., No. 12-cv-11935, 2015 WL 3407555, at *3 (D. Mass. May 27, 2015)), R&R adopted 2020 WL 9748373 (D. Mass. Oct. 7, 2020).  "It is crystal clear that any previously privileged information actually revealed . . . los[es] any veneer of privilege." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 23 (1st Cir. 2003).  "It is less clear, however, when a partial disclosure of an attorney-client communication results in a waiver of the rest of the communication."  Joint Active Sys., 2020 WL 9747574, at *5 (citing Everlight, 2015 WL 3407555, at *3).  "While some courts have held that partial disclosure of an attorney-client communication is sufficient to waive the privilege,

others have recognized an exception to the waiver rule when a client merely discloses a summary or conclusion of the attorney's legal opinions." Id. (citing Everlight, 2015 WL 3407555, at *3–4); see also Neelon v. Krueger, No. 12-cv-11198, 2015 WL 4254017, at *5 (D. Mass. July 14, 2015) ("Most courts that have considered the issue have found no waiver where a client disclosed only that an attorney opined that his conduct was lawful or consistent with the terms of a contract.").

Ms. Callahan consulted with two attorneys regarding her legal position vis-à-vis Merz. [ECF No. 24-1 at 1 (email noting that Ms. Callahan had "consulted 2 different experts," identified later in the email as attorneys, regarding Merz's request for a second opinion, her rights under the FMLA and the Health Insurance Portability and Accountability Act ("HIPAA"), and Ms. Lobell's December 2, 2019 email)]. She then reported her attorneys' top-line conclusions to Ms. Lobell: that Merz had no legal basis for requiring a second opinion and that her FMLA and HIPAA rights were being interfered with and/or violated. [Id.]. By doing so, she waived privilege as to those top-line conclusions. The question remains, however, whether she also waived privilege with respect to the more detailed attorney-client communications undergirding those conclusions. The Court finds that she has not.

As noted above, there is "murkiness in the case law" concerning partial waiver, see Avid Tech., Inc. v. Media Gobbler, Inc., No. 14-cv-13746, 2016 WL 696092, at *4 (D. Mass. Feb. 19, 2016), and neither party has pointed to First Circuit precedent directly on point. Against this backdrop, the Court will not require Ms. Callahan to disclose any additional communications with counsel regarding the second opinion requirement and/or her rights under the FMLA and HIPAA beyond what she already disclosed to Merz via her December 2019 email. The Court agrees with those courts that have found that disclosure of an attorney's ultimate conclusion does

4

not necessarily result in a waiver as to the attorney's reasoning or rationale supporting (or other detailed communications leading to) that conclusion.  See Neelon, 2015 WL 4254017, at *6 (collecting cases).  Where Ms. Callahan disclosed only that (1) she had consulted with attorneys and (2) the attorneys concluded that Merz's conduct was unlawful, she need not disclose additional communications concerning that consultation and conclusion.

Further, the cases that Merz relies on are factually distinguishable.  In Everlight, the court found waiver where the defendant's witness testified as to a specific report that was provided to an attorney in the course of obtaining legal advice.  2015 WL 3407555, at *4–5.  Similarly, in United States ex rel. Wollman v. Mass. Gen. Hosp., Inc., the court found waiver where a report prepared by an attorney was provided to a third party.  475 F. Supp. 3d 45, 65–66 (D. Mass. 2020).  Here, Ms. Callahan has not disclosed a report (or any detail) regarding the advice that she received (or what she told the attorneys in the course of seeking advice).  She simply relayed her attorneys' top-line conclusions (i.e., that Merz was acting unlawfully and/or potentially liable).  Finally, because the court in Amgen Inc. v. Hoechst Marion Roussel, Inc. was addressing inadvertent disclosure, that case lends little support to Merz.[1]  190 F.R.D. 287 (D. Mass. 2000).

### III.   CONCLUSION

Accordingly, for the reasons set forth above, Merz's motion to compel, [ECF No. 23], is DENIED.

**SO ORDERED.**

November 17, 2021                                                        /s/ Allison D. Burroughs
                                                                                      ALLISON D. BURROUGHS
                                                                                      U.S. DISTRICT JUDGE

---

[1] The Court also notes that Merz has failed to articulate why the specific content of Ms. Callahan's communications with counsel in December 2019 are relevant to any claims or defenses in this action.